J-S65031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.D.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: W.E.M., MOTHER | : | No. 889 EDA 2017 |

Appeal from the Order Entered February 8, 2017
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-000911-2015,
CP-51-DP-0000985-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: S.M.M.-D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: W.E.M., MOTHER | : | No. 893 EDA 2017 |

Appeal from the Order Entered February 8, 2017
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-000820-2016,
CP-51-DP-0001467-2015

BEFORE:  OLSON, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED DECEMBER 12, 2017**

W.E.M. ("Mother") appeals from the Decrees and Orders[1] entered on

February 8, 2017, granting the Petitions filed by the Philadelphia Department

of Human Services ("DHS") to involuntarily terminate her parental rights to

---

[1] Although the consolidated caption refers to "Order," Mother appeals from the Decrees terminating her parental rights to her two children, and the Orders changing their placement goals to adoption.

her dependent female children, S.M.M.-D. a/k/a "S.D." (born in May of 2015), and S.D.M. (born in March 2010) (collectively, "Children"),[2] pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and to change Children's permanency goals to adoption pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351.[3] Mother's counsel, Edelina Schuman, Esquire ("Attorney Schuman"), has filed with this Court a Motion for leave to withdraw as counsel and a brief pursuant to **Anders v. California**, 386 U.S. 738, 744 (1967). We affirm, and grant Attorney Schuman leave to withdraw.

In its May 23, 2017 Opinion, the trial court set forth the factual background of this appeal, as follows:

> On April 3, 2014, Children's family became known to [DHS] when [it] received a General Protective Services ("GPS") Report that alleged that Mother was unemployed, using drugs and had been hospitalized at Friends Hospital. (Statement of Facts[,] Petition to Terminate Parental Rights RE S[.]M[.,] Paragraph A). On April 7, 2014, DHS received a supplemental report alleging Mother[,] on a regular basis[,] would leave S[.]M[.] and her siblings with a friend or family member for extended periods of time. S[.]M[.]'s [siblings'] father[,] L[.]K[.,] … was incarcerated. (Statement of Facts[,] Petition to Terminate Parental Rights RE S[.]M[.,] Paragraph A).
>
> On May 1, 2014, the Honorable Judge Jonathan Irvine adjudicated the [c]hild[,] S.M.[,] dependent. (Statement of

---

[2] Children have three siblings, S.M., S.M., and L.K., who were fathered by L.K. These siblings are not subjects of this appeal. **See** N.T., 2/8/17, at 3-8.

[3] In separate Decrees entered on February 8, 2017, the trial court terminated the parental rights of K.M., who is the father of S.M.; R.D., who is the father of S.D.; and any unknown father. No father, or unknown father, has filed an appeal, nor is any such individual a party to the present appeal.

Facts[,] Petition to Terminate Parental Rights RE S[.]M[.,] Paragraph M)[.] On May 15, 2014, the Community Umbrella Agency [("CUA")] developed a Single Case Plan ("SCP"). The goals for Mother were (1) to participate in parenting classes; and (2) to attend supervised visits with S.M. (Statement of Facts Petition to Terminate Parental Rights RE S[.]M[.,] Paragraph N). On July 25, 2014, the Clinical Evaluation Unit [("CEU")] completed a Progress Report stating that Mother had tested positive for marijuana ("THC") on May 1, 2014 and May 28, 2014. (Statement of Facts[,] Petition to Terminate Parental Rights RE S[.]M[.,] Paragraph Q).

On August 12, 2014, CUA revised the SCP. The objectives identified for Mother were (1) to submit to three random drug screens prior to the next court hearing; (2) to attend all recommended programs provided at the Achieving Reunification Center ("ARC"); and (3) to attend all weekly visitations. (Statement of Facts[,] Petition to Terminate Parental Rights RE S[.]M[.,] Paragraph S). On January 9, 2015, CEU completed a Progress Report stating that Mother had failed to contact CEU and that Mother tested positive [THC] on October 23, 2014 and December 12, 2014. (Statement of Facts[,] Petition to Terminate Parental Rights RE S[.]M[.,] Paragraph V).

On May 30, 2015, DHS received a GPS report alleging that [Mother had given] birth to S.D. (Statement of Facts[,] Petition to Terminate Parental Rights RE S[.]M[.,] Paragraph Z). … At that time[,] Mother was noncompliant with her SCP objectives and had not consistently attended the ARC program. Mother again tested positive for [THC] in February 2015. (Statement of Facts[,] Petition to Terminate Parental Rights RE S[.]D[.,] Paragraph BB). On June 2, 2015, DHS obtained an Order for Protective Custody ("OPC") for S.D.[,] who was placed in foster care. (Statement of Facts[,] Petition to Terminate Parental Rights [RE] S[.]D[.,] Paragraph CC). On June 12, 2015, S.D. was adjudicated dependent. (Statement of Facts[,] Petition to Terminate Parental Rights [RE] S[.]D[.,] Paragraph GG).

On July 7, 2015, the CEU completed a Progress report stating that Mother had tested positive for [THC] on April 16, 2015, June 4, 2015 and June 12, 2015. (Statement of Facts[,] Petition to Terminate Parental Rights RE S[.]D[.,] Paragraph HH). On August 7, 2015, CUA revised the SCP. The objectives for Mother were (1) to be evaluated by the CEU for dual diagnosis;

(2) to submit a pay stub; (3) to comply with all court orders; (4) to attend all recommended programs at the ARC program; (5) to complete anger management classes; (6) to participate in mental health treatment; (7) to participate in a drug and alcohol group; [and] (8) to attend weekly visitation.  (Statement of Facts[,] Petition to Terminate Parental Rights RE S[.]D[.,] Paragraph LL).  On September 17, 2015, ARC completed a Parent/Caregiver Status Report stating that Mother was referred for [a]nger [m]anagement[,] but her referral was cancelled due to noncompliance[,] and that Mother was inconsistent with receiving mental health treatment.  (Statement of Facts[,] Petition to Terminate Parental Rights RE S[.]D[.,] Paragraph OO).

On January 20, 2016, DHS received a Child Protective Services Report alleging that Mother was unemployed, [and] suffering from depression, and that there was a history [of] domestic violence between Mother and Father[,] L[.]K. (Statement of Facts[,] Petition to Terminate Parental Rights RE S[.]D[.,] Paragraph YY).  On January 28, 2016, at a permanency review hearing[,] the Honorable Jonathan Irvine ruled (1) [] Children remain committed; (2) a stay away order be entered regarding Mother and Father L[.]K[.]; (3) that Mother lacked adequate housing and that Mother had failed to attend anger management classes and substance abuse treatment. (Statement of Facts[,] Petition to Terminate Parental Rights RE S[.]D[.,] Paragraph ZZ).

On or about September 7, 2016, DHS filed the underlying Petition to terminate Mother's Parental Rights to Children.  At the time of the filing of the [P]etition, Mother had failed to successfully complete substance abuse treatment and she had constantly rendered positive drug screens.

Trial Court Opinion, 5/23/17, at 1-5.  Moreover, on September 8, 2016, DHS

filed Petitions to change the permanency goals for Children to adoption.[4]

_____

[4] The trial court docket reflects that DHS filed the termination Petitions on September 8, 2016, as well.

On February 8, 2017, the trial court held a hearing on the termination/goal change Petitions. At the hearing, DHS presented the testimony of Natasha Triplett ("Triplett"), the CUA Wordsworth case manager assigned to the family. N.T., 2/8/7, at 3, 10. Mother, who was present at the hearing and represented by Attorney Schuman, testified on her own behalf. court-appointed child advocate[,] Lawrence Bistany, Esquire ("Child Advocate"), was also present and participated at the hearing. Child Advocate cross-examined Triplett. *Id.* at 28-29. After the hearing, the trial court entered its Decrees and Orders involuntarily terminating Mother's parental rights to Children, and changing Children's permanency goals to adoption. *Id.* at 33-34.

On March 10, 2017, Mother simultaneously filed Notices of appeal and Pa.R.A.P. 1925(b) Concise Statements of matters complained of on appeal, from the termination Decrees and goal change Orders. On April 7, 2017, this Court, acting *sua sponte*, consolidated the appeals.

On August 3, 2017, Attorney Schuman filed her Motion for leave to withdraw as counsel and an *Anders* brief. In the *Anders* brief, Attorney Schuman raises the following issues:

> 1. Whether the trial court committed reversible error, when it involuntarily terminated [M]other's parental rights where such determination was not supported by clear and convincing evidence under the adoption act, 23 P[a].C.S.A. § 2511(a)(1), (2), (5) and (8)[?]
>
> 2. Whether the trial court committed reversible error when it involuntarily terminated [M]other's parental rights without giving

primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of [Children,] as required by the [A]doption [A]ct, 23 P[a].C.S.A. § 2511(b)[?]

3. Whether[] the trial court erred because the evidence was overwhelming and undisputed that [M]other demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with [Children?]

*Anders* Brief at 5 (unpaginated).

Pursuant to **Anders**, when counsel believes an appeal is frivolous and wishes to withdraw from representation, he or she must do the following:

(1) petition the court for leave to withdraw stating that after making a conscientious examination of the record . . ., counsel has determined the appeal would be frivolous;

(2) file a brief referring to anything that might arguably support the appeal. . .; and

(3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted).[5]

In **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of **Anders**, *i.e.*, the contents of an **Anders** brief, and required that the brief

(1) provide a summary of the procedural history and facts, with citations to the record;

---

[5] In *In re V.E.*, 611 A.2d 1267, 1274-75 (Pa. Super. 1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights. "When considering an **Anders** brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw." *In re S.M.B.*, 856 A.2d at 1237.

- 6 -

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. "After an appellate court receives an *Anders* brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." *In re S.M.B.*, 856 A.2d at 1237.

Attorney Schuman has complied with each of the requirements of *Anders*. Attorney Schuman indicates that she has conscientiously examined the record and determined that an appeal would be frivolous. Further, Attorney Schuman's *Anders* brief comports with the requirements set forth by the Supreme Court of Pennsylvania in *Santiago*. Finally, attached to Attorney Schuman's Motion for leave to withdraw is a copy of her letter to Mother, dated August 3, 2017, advising Mother of her right to proceed *pro se* or retain alternate counsel, and stating Attorney Schuman's intention to seek permission to withdraw. Accordingly, Attorney Schuman has complied with the procedural requirements for withdrawing from representation, and we will proceed with our own independent review.

In the **Anders** brief, Attorney Schuman contends that the trial court abused its discretion or erred as a matter of law in concluding that DHS presented clear and convincing evidence that was sufficient to support the involuntary termination of Mother's parental rights under section 2511(a)(1), (2), (5), (8), and (b). **Anders** Brief at 13-16, 21-22 (unpaginated). Attorney Schuman likewise contends that there was insufficient evidence to support the change of the permanency goal to adoption. **Id.** at 13-14, 21-22 (unpaginated).[6]

_____

[6] Mother has waived any challenge to the change of Children's permanency goal to adoption under 42 Pa.C.S.A. § 6351 by failing to raise the issue in her Concise Statement and Statement of Questions Involved in her brief. **See Krebs v. United Ref. Co. of PA**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the Statement of Questions Involved in his brief on appeal). However, Attorney Schuman challenges whether DHS made reasonable efforts to reunify Children with Mother, and challenges the goal change in the Summary of Statement in Support of Withdrawal of Counsel portion of the **Anders** brief. **See Anders** Brief at 10. Even if Mother had not waived the issue for this reason, this Court has stated, "[o]nce counsel has satisfied the above requirements [for a motion to withdraw and **Anders** brief], it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Goodwin**, 928 A.2d 287, 291 (Pa. Super. 2007) (en banc) (quoting **Commonwealth v. Wright**, 846 A.2d 730, 736 (Pa. Super. 2004)). **See Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (following **Goodwin**). Thus, we may address whether DHS established the grounds for the termination and the goal change to adoption, and the related argument concerning whether DHS used reasonable efforts to reunify Mother with Children, raised by Attorney Schuman in her **Anders** brief, as part of our independent review.

We will review the Decrees and Orders together, as did the trial court in its Opinion. In reviewing an appeal from a decree terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; [***In re:***] ***R.I.S.***, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and internal quotation marks omitted).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Section 2511 provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

 **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant

- 10 -

to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

The Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .
>
> …
>
> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of S.P.*, 47 A.3d at 827 (citations omitted).

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

- 11 -

This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, 620 A.2d [481,] 485 [(Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

[C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent …. Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763-64 (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years).

Our standard of review in a dependency case is as follows:

"The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *In re R.J.T.*, 608 Pa. 9, [27], 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

*In Interest of: L.Z.*, *A Minor Child*, 111 A.3d 1164, 1174 (Pa. 2015).

- 13 -

Regarding the disposition of a dependent child, section 6351(e), (f), (f.1), and (g) of the Juvenile Act provides the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection and physical, mental and moral welfare of the child.

When considering a petition for goal change for a dependent child, the trial court considers

> the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007) (citing 42 Pa.C.S.A. § 6351(f)).

Additionally, Section 6351(f.1) requires the trial court to make the following additional determination regarding the child's placement goal:

> **(f.1) Additional determination.—**Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:
>
> * * *
>
> (2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety,

> protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f.1)(2).

On the issue of a placement goal change, this Court has stated that,

> [w]hen a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. **See In re Sweeney**, 393 Pa. Super. 437, 574 A.2d 690, 691 (1990) (noting that "[o]nce a child is adjudicated dependent . . . the issues of custody and continuation of foster care are determined by the child's best interests"). Moreover, although preserving the unity of the family is a purpose of [the Juvenile Act], another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S.[A.] § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child." **In re E.F.V.**, 315 Pa. Super. 246, 461 A.2d 1263, 1267 (1983) (citation omitted).

**In re K.C.**, 903 A.2d 12, 14-15 (Pa. Super. 2006).

The trial court addressed the sufficiency of the evidence to support the termination under section 2511(a)(2) and (b), and the change of permanency goal to adoption, as follows:

> S.M. was adjudicated dependent on May 1, 2014. S.D. was adjudicated dependent on June 12, 2015. The record demonstrated Mother's ongoing unwillingness to provide care or control for [] Children; [and/or] to perform any parental duties and a failure to remedy the conditions that brought [] Children into care. The [c]ourt found clear and convincing evidence that termination of Mother's parental rights would be in the best interest of [] Children pursuant to 23 Pa.C.S.[A.] §§ 2511(a)(1), (2), (5) and (8) and 23 Pa.C.S.[A.] § 2511(b).

At the Termination Hearing, the CUA Representative testified that the SCP objectives for Mother were that she obtain anger management counseling, parenting counseling, alcohol and drug treatment[, and] mental health treatment[,] and that she regularly visit [] Children. (N.T.[,] February 8, 2017[,] Page 11.) The CUA Representative testified that Mother never completed anger management courses and that she had been discharged from ARC eleven (11) times for non-compliance. (N.T.[,] February 8, 2017[,] Page 13). The CUA Representative testified that Mother had failed to complete alcohol and drug treatment (N.T.[,] February 8, 2017 Page 16)[,] and consistently provided positive drug screens. Mother tested positive for [THC] on April 18, 2016, August 22, 2016 and August 30, 2016. (N.T.[,] February 8, 2017[,] Page 22). Mother testified at the hearing that she had not completed drug and alcohol counseling and mental health treatment. (N.T.[,] February 8, 2017[,] Page 30).

Regarding Child S[.]M[.], the CUA Representative testified that S[.]M[.] attended behavioral therapy and that S[.]M[.] had been moved eight (8) times from foster homes due to behavioral issues. (N.T.[,] February 8, 2017[,] Page 24-25). The CUA Representative testified that S[.]M[.] attended her individual behavioral therapy sessions with her foster parent. The CUA Representative testified that S[.]M[.]'s behavior improved as [a] result of the care of her foster parent[,] who was actively involved with S[.]M[.]'s therapy. As a result, the CUA Representative was able to testify that it was in the best interests of [the child] that S[.]M[.]'s goal be changed to adoption[,] and that no irreparable harm would result to the child if Mother's parental rights were terminated. (N.T.[,] February 8, 2017[,] Page 24-25). Regarding S[.]D[.], the CUA Representative also testified that it would be in S[.]D[.]'s best interest if S[.]D[.]'s goal was changed to adoption[,] and that S[.]D[.,] would not suffer irreparable harm if Mother's parental rights were terminated and that S[.]D[.,] was in a suitable pre-adoptive home. (N.T.[,] February 8, 2017[,] Pages 24-25).

This [c]ourt found the testimony of the CUA Representative to be credible and accorded it great weight. Based upon this testimony and the documents in evidence, this [c]ourt found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.[A.] §§ 2511(a)(1)[,] (2)[,] (5)[,] and (8)[,] as Mother [had] failed to remedy the conditions that brought [] Children into care. The [c]ourt further concluded that

the termination of [Mother's] parental rights would be in the best interest of Children pursuant to 23 Pa.C.S.[A.] § 2511(b). This [c]ourt concluded that the pre-adoptive foster parents were able to meet the needs of each child.

**CONCLUSION**

This [c]ourt, after review of the findings of fact and the testimony presented during the Termination Hearing on February 8, 2017, finds clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.[A.] [§] 2511(a) … (2) …. This [c]ourt further finds[,] pursuant to 23 Pa.C.S.[A.] [§] 2511(b), [that] termination of [Mother's] parental rights would not have a detrimental effect on [the] Children and would be in [] Children's best interest.

Trial Court Opinion, 5/23/17, at 6-8 (footnotes omitted).

After a careful review of the record, we agree with the trial court's determination that termination of Mother's parental rights to Children is warranted pursuant to section 2511(a)(2), as Mother clearly lacks parental capacity, and the evidence showed that she will be unable to remedy that situation within a reasonable period of time, if ever. *See In re E.M.*, 620 A.2d at 484 (stating that "[a] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.") (citation omitted).

Additionally, the contention in the **Anders** brief, *i.e.*, that DHS did not make reasonable efforts to reunify Children with Mother, lacks merit. Our Supreme Court has rejected the argument that the provision of reasonable efforts by the county children's services agency is a factor in termination of the parental rights of a parent to a child. **See In the Interest of: D.C.D., a**

- 17 -

*Minor*, 105 A.3d 662, 673-74, 676 (Pa. 2014) (rejecting the suggestion that an agency must provide reasonable efforts to enable a parent to reunify with a child prior to the termination of parental rights, and rejecting the suggestion that section 2511 of the Adoption Act should be read in conjunction with section 6351 of the Juvenile Act, particularly section 6351(f)(9)(iii)).

Our review further discloses that there is competent evidence in the record that supports the trial court's findings and credibility determinations with regard to section 2511(b). The evidence additionally showed that the termination of Mother's parental rights will best serve Children's developmental, physical and emotional needs and welfare. Finally, there is no evidence of a bond between Mother and Children that is worth preserving, or that they will suffer irreparable harm from the termination of Mother's parental rights.

"[A] parent's basic constitutional right to the custody and rearing of … her child is converted, upon the failure to fulfill … her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). "[W]e will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

Further, this Court has held that a parent's love of his child, alone, does not preclude a termination. *See In re L.M.*, 923 A.2d 505, 512 (Pa. Super. 2007) (stating that a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights).

Accordingly, we find no abuse of discretion by the trial court in terminating Mother's parental rights to Children under section 2511(a)(2) and (b). *In re Adoption of S.P.*, 47 A.3d at 826-27. We, therefore, affirm the termination Decrees. Further, our review discloses sufficient evidence in the record to support the trial court's change of Children's permanency goals to adoption pursuant to section 6351 of the Juvenile Act. Accordingly, we affirm the goal change Orders. Moreover, as we cannot find any additional meritorious issues in the record, and we agree with Attorney Schuman that Mother's appeal is frivolous, we grant Attorney Schuman's Motion for leave to withdraw from representation.

Motion granted. Decrees and Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/12/2017

- 19 -